UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

ROBERT GRUND, SUSAN GRUND, on behalf of
themselves and all others similarly
situated,

                 Plaintiffs,                    09 Civ. 8025

    -against                           OPINION

DELAWARE CHARTER GUARANTEE & TRUST
COMPANY D/B/A PRINCIPAL TRUST COMPANY,
and PRINCIPAL FINANCIAL GROUP, INC.,

                  Defendants.

------------------------------------------X

A P P E A R A N C E S :


        Attorneys for Plaintiffs

        LOVELL STEWART HALEBIAN JACOBSON LLP
        61 Broadway, Suite 501
        New York, NY  10006
        By:  Christopher Lovell, Esq.

        ZAMANSKY & ASSOCIATES LLC
        50 Broadway, 32nd Floor
        New York, NY  10004
        By:  Jacob H. Zamansky, Esq.


        Attorneys for Defendants

        SIDLEY AUSTIN LLP
        787 Seventh Avenue
        New York, NY  10019
        By:  Joel S. Feldman, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/26/11

**Sweet, D.J.**

Defendants Principal Financial Group, Inc. ("Principal Financial") and Delaware Charter Guarantee & Trust Company d/b/a Principal Trust Company ("Principal Trust") (collectively, the "Defendants") have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Consolidated Amended Complaint ("CAC") filed by Plaintiffs Robert Grund, Susan Grund, Jeffrey Golden, Victoria Golden, Stephanos Papademetriou, Vaciliki Papademetriou, and Eleni Papademetriou ("Plaintiffs"). Upon the conclusions set forth below, the motion is granted in part and denied in part.

The Plaintiffs and the Defendants entered into Self-Directed Individual Retirement Trust Agreements ("SIRTA") to establish traditional individual retirement accounts ("IRAs"). The Plaintiffs directed investment in the Westgate Fund which proved to be a Ponzi scheme operated by James Nicholson ("Nicholson"). At issue is the adequacy of the twenty-six claims set forth in the CAC, alleging breach of contract,

negligence, breach of fiduciary duty, unjust enrichment, and violations of ERISA duties in its 229 paragraphs.

## I.  Prior Proceedings

The Plaintiffs filed their putative class action complaint on September 18, 2009 alleging breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, breach of contract, unjust enrichment, negligence, and conversion.  The Defendants moved to dismiss the complaint, and on April 16, 2010 the Plaintiffs filed the CAC.  The instant motion of the Defendants to dismiss the CAC was heard and marked fully submitted on December 8, 2010.

The CAC alleges twenty-six claims for relief as follows:

| | |
|---|---|
| First Claim for Relief | Breach of Contract under Federal Law and Breach of Federally Imposed Duties to Hold Assets and Not Commingle.   (CAC ¶¶ 119-132.) |
| Second | Ordinary and Gross Negligence under Federal Law.  (CAC ¶¶ 133-138.) |

3

| | |
|---|---|
| Third | Breach of Fiduciary Duty under Federal Law and Breach of Fiduciary Duties Imposed by Federal Law.  (CAC ¶¶ 139-143.) |
| Fourth | Unjust Enrichment and Restitution under Federal Law.  (CAC ¶¶ 144-145.) |
| Fifth | Breach of Contract to Hold Assets and Not Commingle under State Law.  (CAC ¶¶ 146-148.) |
| Sixth | Ordinary and Gross Negligence under State Law.  (CAC ¶¶ 149-151.) |
| Seventh | Breach of Fiduciary Duty under State Law.  (CAC ¶¶ 152-154.) |
| Eighth | Unjust Enrichment and Restitution under State Law. (CAC ¶¶ 155-156.) |
| Ninth | Ordinary and Gross Negligence under State Law (Failure to Furnish Statements). (CAC ¶¶ 157-159.) |
| Tenth | Breach of Fiduciary Duty under State Law.  (CAC ¶¶ 160-162.) |
| Eleventh | Unjust Enrichment and Restitution under State Law. (CAC ¶¶ 153-165) |
| Twelfth | Breach of Contract to Provide Accurate Annual Accounting under State Law.  (CAC ¶¶ 166-169.) |

| | |
|---|---|
| Thirteenth | Ordinary and Gross Negligence under State Law (Failure to Furnish Statements).  (CAC ¶¶ 170-172.) |
| Fourteenth | Breach of Fiduciary Duty under State Law.  (CAC ¶¶ 173-175.) |
| Fifteenth | Unjust Enrichment and Restitution under State Law. (CAC ¶¶ 176-178.) |
| Sixteenth | Breach of Contract under Federal law.  (CAC ¶¶ 179-188.) |
| Seventeenth | Ordinary and Gross Negligence under Federal Law (Failure to Furnish Statements).  (CAC ¶¶ 189-192.) |
| Eighteenth | Breach of Fiduciary Duty under Federal Law (Failure to Furnish Statements).  (CAC ¶¶ 193-196.) |
| Nineteenth | Unjust Enrichment and Restitution under Federal Law.  (CAC ¶¶ 197-198.) |
| Twentieth | Breach of Contract under State Law (Failure to Furnish Statements).  (CAC ¶¶ 199-201.) |
| Twenty-First | Ordinary and Gross Negligence under State Law (Failure to Furnish Statements).  (CAC ¶¶ 202-204.) |

| | |
|---|---|
| Twenty-Second | Breach of Fiduciary Duty under State Law.  (CAC ¶¶ 205-207.) |
| Twenty-Third | Unjust Enrichment and Restitution under State Law. (CAC ¶¶ 208-210.) |
| Twenty-Fourth | Implied Right of Action under Federal Law Including Section 408 of the Internal Revenue Code.  (CAC ¶ 211-216.) |
| Twenty-Fifth | Breach of Fiduciary Duty under ERISA.  (CAC ¶¶ 217-223.) |
| Twenty-Sixth | Failure to Disclose under ERISA (29 USC § 1132).  (CAC ¶¶ 224-229.) |

According to the CAC, the Plaintiffs entered into a standardized form contract for a self-directed IRA that was drafted by Defendants, which in turn was copied in part from a federal form contract created by the Internal Revenue Service ("IRS").  See IRS Form 5305A; CAC ¶¶ 48-50.  The form, as promulgated by the IRS, sets forth a number of provisions which must be included to create a valid "Traditional Individual Retirement Custodial Account" under § 408 of the Internal Revenue Code ("IRC").  CAC ¶ 48.  Under IRC § 408, the custodian/trustee has a duty to acquire and hold particular investments; to keep custody of investments; to refrain from

6

commingling the investments of each account with any other
property; to deposit assets of accounts requiring safekeeping in
an adequate vault; to determine the assets held by it in trust
and the value of such assets at least once in each calendar year
and no more than 18 months after the preceding valuation; and to
receive, issue receipts for, and safely keep securities.  CAC ¶¶
42, 46; see Treas. Reg. 1.408-2(e).  The SIRTA, written by
Defendants, was signed by Plaintiffs.  Included in Defendants'
standard application booklet for an IRA was a form letter from
the IRS which ensured that the IRA contract conformed to the
rules and fiduciary standards established by IRC § 408.  CAC ¶
8.

        According to the CAC, while Defendants were collecting
fees from Plaintiffs for services which they allegedly failed to
perform, they were allegedly permitting an unauthorized person,
Nicholson, to take a percentage of the retirement money
belonging to Plaintiffs.  Plaintiffs believed that Defendants
were upholding their contractual obligations, adhering to their
duties as custodians/trustees, and protecting Plaintiffs'
retirement money, and Defendants are alleged to have negligently

failed to perform many of their contractual and fiduciary
obligations.  CAC ¶ 51.

Defendants are alleged to have failed to collect
contributions directly from Plaintiffs, a practice which is
inconsistent with industry standards, and failed to send
invoices directly to their clients, instead sending them to
Nicholson, again a practice inconsistent with industry
standards.  CAC ¶ 51.  Plaintiffs allegedly only received
invoices from Defendants, requesting that they pay for Principal
Trust's trustee services, after Nicholson's arrest.  Id.

According to the CAC, Plaintiffs trusted Defendants to
perform their duties as trustees/custodians of their IRA
accounts but, instead of performing them, Defendants delegated
much of the control over the IRA accounts to Nicholson.  This
delegation was undertaken despite Nicholson's background and the
fact that he was not an eligible party to any of the necessary
IRA contracts required by federal law for the management of IRA
and pension funds.  Although they were in a unique position as
trustees to search the Securities and Exchange Commission's
("SEC") EDGAR databases and other state and federal databases,

Defendants allegedly failed to discover that none of Nicholson's
purported investment vehicles were registered or qualified for
IRA and pension fund investment, failed in their fiduciary
duties as trustees, and breached their contractual duties.  CAC
¶ 69.


II.  **The Applicable Standard**


        Fed. R. Civ. P. 8(a)(2) requires "a short and plain
statement of the claim showing that the pleader is entitled to
relief."


        Therefore, to survive a motion to dismiss pursuant to
Rule 12(b)(6), "a complaint must contain sufficient factual
matter, accepted as true, to 'state a claim to relief that is
plausible on its face.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937,
1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,
570 (2007)).  Though the court must accept the factual
allegations of a complaint as true, it is "not bound to accept
as true a legal conclusion couched as a factual allegation."
Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).
Plaintiffs must allege sufficient facts to "nudge [ ] their

claims across the line from conceivable to plausible." Twombly,
550 U.S. at 570.


        Under these standards the CAC is not short, concise,
or plain and, by its repetitive format, a number of claims
appear to be duplicative.  (Def. Mem. in Supp. at 6)).  While
dismissal on Rule 8(a)(2) grounds might be tempting, in an
effort to minimize unnecessary motion practice, the adequacy of
the claims will be considered in the following grouping, the
federal claims, including the ERISA claims (Claims, First
through Fourth, Sixteenth through Nineteenth, Twenty-Fourth
through Twenty-Sixth), the contract claims (Fifth, Twentieth),
the negligence claims (Sixth, Ninth, Twentieth, Twenty-First),
the breach of fiduciary duty claims (Seventh, Tenth, Fourteenth,
Twenty-Second), and the unjust enrichment claims (Eighth,
Eleventh, Fifteenth, Twenty-Third).


## III. Principal Financial is Not Dismissed


        The Defendants have urged that the CAC contains no
allegations that Principal Financial was involved in the
transactions at issue.  (Def. Mem. in Supp. at 9).  Although the

10

Plaintiffs seek to meet this contention by citing authorities relating to alter ego status, no such status is alleged in the CAC.

However, by footnoting 26 C.F.R. § 1.408-2 (e)(5)(i)(A)(1), if that section has been incorporated into the contract as alleged above, "the owner or directors of the applicant will be responsible for the proper exercise of fiduciary powers by the applicant." This responsibility of Principal Financial is sufficient to defeat the Defendants' motion with respect to Principal Financial.[1]

## IV. __The Federal Claims Are Dismissed__

Plaintiffs have asserted claims for breach of contract, negligence, breach of fiduciary duty, unjust enrichment, and ERISA violations under federal law, based on ERISA, the establishment of the office of Employee Plans and Exempt Organizations, Section 408(a) of the Internal Revenue

---

[1] Defendants have brought the order dismissing claims in Mandelbaum v. Fiserv, Inc., 09 Civ. 752, at *9-12 (Mar. 29, 2011), to the Court's attention, in which claims against the parent company were dismissed. However, the Mandelbaum opinion does not consider 26 C.F.R. § 1.408-2(e)(5)(i)(A)(1).

Code ("IRC") and the regulations thereunder precluding Form
5305A, and federal common law.   (Pl. Opp. Mem. at 7-18.)

### a.  IRC Section 408 Does Not Provide a Private Right of Action

Initially, Plaintiffs have asserted that § 408 of the
IRC provides a private right of action.

Although § 408 sets forth a series of statutory
guidelines for IRAs seeking tax-deferred status, see 26 U.S.C.
§ 408, the Honorable Lewis Kaplan in a well-reasoned opinion
recognized the limited scope of § 408: "Section 408 of the Code
does no more than establish a framework whereby individuals may
obtain favorable tax treatment...." Sirna v. Prudential Secs.,
Inc., No. 95 Civ. 8422, 95 Civ. 9016, 96 Civ. 4534, 1997 WL
53194, at *3 (S.D.N.Y. Feb. 10, 1997) (involving the alleged
failure of an IRA trustee to properly manage beneficiary funds).
Judge Kaplan dismissed as "frivolous" the plaintiff's argument
that an IRA trustee's alleged failure properly to manage an
account somehow "violated" § 408's tax deferral protocol:

> [T]here is nothing in the wording or effect of the
> statute to suggest that Congress intended to create,
> via the tax code, a private right of action against

> errant fiduciaries.  When Congress did intend to
> create such private rights of action, it did so
> unambiguously, as in Title I of ERISA.  Furthermore,
> actions for breach of fiduciary duty are traditionally
> matters of state law.

1997 WL 53194, at *3.  He held that "there is no implied cause
of action against allegedly errant IRA fiduciaries under Section
408 of the Internal Revenue Code." Id.  See also Reynolds v. De
Silva, No. 09 Civ. 9218, 2010 WL 743510, at *7 (S.D.N.Y. Feb.
24, 2010) ("there is no private right of action for violations
of the IRC"); Hines v. Fiserv, Inc., No. 08 Civ. 2569, 2010 WL
1249838, at *2 (M.D. Fla. Mar. 25, 2010).  The conclusions
reached in Sirna are equally applicable here.

### b. Plaintiffs' ERISA Claims are Dismissed for Lack of Standing and Failure to State a Claim

Claims twenty-five and twenty-six allege that
"[c]ertain of class members' accounts were pension or IRA
accounts" and therefore give rise to claims for "breach of
fiduciary duty" and "failure to disclose" under ERISA.  CAC ¶¶
217-229.  If Plaintiffs could state a claim under ERISA, all
twenty-four of their other claims would be preempted.  Section
514(a) of ERISA states that ERISA "shall supersede any and all
State laws insofar as they may now or hereafter relate to any

employee benefit plan described in section 1003(a) of this title

and not exempt under section 1003(b) of this title."  29 U.S.C.

§ 1144(a).  The term "State law" includes not only "all laws,

decisions, rules, regulations, or other State action having the

effect of law," 29 U.S.C. § 1144(c)(1), but also state law

breach of contract and tort claims involving an ERISA plan.

Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52-57 (1987).


    Only plaintiffs who are properly considered

"participants" or "beneficiaries" (or "fiduciaries") of an

employee benefit plan have standing to sue under ERISA.  See

Caltagirone v. NY Cmty. Bancorp, Inc., 257 Fed. Appx. 470, 472

(2d Cir. 2007); Central States Se. & Sw. Areas Health & Welfare

Fund v. Merck-Medco Managed Care, LLC, 433 F.3d 181, 200-01 (2d

Cir. 205); DaPonte v. Manfredi Motors, Inc., 157 Fed. Appx. 328,

331 (2d Cir. 2005) (quoting Aetna Health Inc. v. Davila, 542

U.S. 200, 210 (2004)).  Therefore, in a putative class action,

the named plaintiffs must properly allege facts establishing

that they are ERISA "participants" or "beneficiaries" in order

to survive a motion to dismiss.  See O'Shea v. Litteton, 414

U.S. 488, 494 (1974) ("if none of the named plaintiffs

purporting to represent a class establishes the requisite of a

14

case or controversy with the defendants, none may seek relief on behalf of himself or any other members of the class.") (citations omitted). The CAC does not allege an ERISA "employee benefit plan," or that any of the named plaintiffs are "participants" in, or "beneficiaries" of, any such plan. Accordingly, the named Plaintiffs lack standing to sue under ERISA. Caltagirone, 257 Fed. Appx. at 473; Teagardener v. Republic-Franklin Inc. Pension Plan, 909 F.2d 947, 951-54 (6th Cir. 1990) (affirming dismissal of ERISA claim for lack of standing).

Moreover, IRA accounts like those Plaintiffs held are explicitly carved out of the scope of ERISA. See 29 U.S.C. § 1051(6) (exempting from coverage under Title I of ERISA "an [IRA] or annuity described in section 408 of [the Code]"); 29 C.F.R. § 2510.3-2(d)(1) ("For purposes of title I of [ERISA], the terms 'employee pension benefit plan' and 'pension plan' shall not include an [IRA] described in section 408(a) of the Code.") Courts have repeatedly held that ERISA does not apply to IRAs. See, e.g., Rose v. The Long Island R.R. Pension Plan, 828 F.2d 910, 913 (2d Cir. 1987); Charles Schwab & Co. v. Debickero, 593 F.3d 916, 919 (9th Cir. 2010) ("IRAs are

15

specifically excluded from ERISA's coverage" because IRAs
involved "no employer oversight, no ongoing employer commitment,
nor any potential for employer abuse").

Plaintiffs argue that this Court may not consider
their lack of ERISA standing at this stage, but rather must wait
until after class certification, relying on Ortiz v. Fibreboard
Corp., 527 U.S. 815, 831 (1999) and its progeny.  (Pl. Opp. Mem.
at 18).  However, Ortiz is a "limited exception" and does not
apply where the standing issue would exist for the named
Plaintiff if they filed their claims alone and not as a class
action.  Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315, 319 & n. 6
(5th Cir. 2002).  Here, Plaintiffs have not alleged that there
is any ERISA-covered employee benefit plan at issue, or that any
named plaintiff was the beneficiary of such a plan.  Therefore,
Plaintiffs have failed to establish their standing under ERISA.

Plaintiffs also have not established any ERISA rights.
Plaintiffs have sought to establish a private right of action
under ERISA through the history and structure of the ERISA
statute, ERISA Title I, Section 408, federal common law, the
Erie Doctrine, and other legal principles.

16

Part of this invocation of ERISA is premised on a
conflation of Title I and Title II of that statute.  Title I of
ERISA sets forth "rules for reporting and disclosure, vesting,
participation, funding, fiduciary conduct, and civil
enforcement" relating to "employee benefit plans,"[2] and
explicitly carves out IRAs.  Title II of "ERISA" consists of
various amendments made to the Internal Revenue Code at the time
of ERISA's passage, including § 408's provision of IRA
guidelines.  See 26 U.S.C. § 401 et seq.; 26 U.S.C. § 408.
Title II does not give rise to an enforceable fiduciary duty
claim, and, although technically part of the "ERISA statute,"
Title II is not generally what courts refer to when describing
"ERISA claims."  See, e.g., Metz v. Indep. Trust Corp., 994 F.2d
395, 399-400 (7th Cir. 1993) ("[Plaintiff's] IRA is not even
governed by ERISA"); In re Houck, 181 B.R. 187, 191-92 (Bankr.

---

[2] "Employee benefit plan" is defined under ERISA as "an employee welfare
benefit plan or an employee pension benefit plan or a plan which is both an
employee welfare benefit plan and an employee pension benefit plan."  29
U.S.C. § 1002(3).  A "participant" includes "any employee or former employee
of an employer, or any member or former member of an employee organization,
who is or may become eligible to receive a benefit of any type from an
employee benefit plan which covers employees of such employer or members of
such organization, or whose beneficiaries may be eligible to receive any such
benefit."  29 U.S.C. § 1002(7).  Plaintiffs do not fall within this umbrella.

17

E.D.Pa. 1995) ("IRAs are tax qualified... but they are not subject to ERISA").

The authorities the Plaintiffs cite do not hold to the contrary. Investment Co. Inst. v. Conover, 596 F. Supp. 1496 (D.D.C. 1984), Investment Co. Inst. v. Clarke, 630 F. Supp. 593 (D. Conn. 1986), and Masi v. Ford City Bank & Trust Co., 779 F.2d 397 (7th Cir. 1985), do not hold that Title I of ERISA applies to IRAs, nor that Title II gives rise to actionable duties or a private right of action. Conover and Clarke were parallel actions seeking declaratory relief on the question of whether federally-regulated banks were permitted, under the Glass-Steagall Act, to establish discretionary, fiduciary "collective investment trusts." Because these factually distinguishable cases dealt with accounts the banks expressly intended to function as discretionary, "fiduciary" accounts, they are not relevant to the non-discretionary IRA accounts at issue here. See Conover, 596 F. Supp. at 1502; Clarke, 630 F. Supp. at 596-97. Masi also involved a discretionary IRA account, and, in any event, was limited by the Seventh Circuit's later decision in Metz, 994 F.2d at 402, which held that non-

18

discretionary IRA custodians owe no duties beyond those defined in the parties' trust agreement.  Id. at 398.

Plaintiffs cite the legislative history of the ERISA statute and contend that Congress's creation of the Office of Assistant Commissioner, Employee Plans and Exempt Organizations in 1974 and amendment of § 408 in 1974 to include guidelines for tax-deferred IRAs indicates that Congress intended to create an IRA fiduciary duty, although no court decision has so held. This argument is unpersuasive and contradicted by the weight of authority cited above.

The ERISA claims are dismissed for lack of standing and failure to state a claim.

### c. Plaintiff's Federal Common Law Claims Fail

In addition to their federal statutory claims, Plaintiffs' CAC has added eight common law claims under "federal" law.

19

Plaintiffs' common law causes of actions are fundamentally creatures of state law.  See Data Probe Acquisition Corp. v. Datatab, Inc., 722 F.2d 1, 4 (2d Cir. 1983) (fiduciary duty); Caceres Agency, Inc. v. Trans World Airways, Inc., 594 F.2d 932, 934 (2d Cir. 1979) (breach of contract); Caggiano v. Pfizer Inc., 384 F. Supp. 2d 689, 691 (S.D.N.Y. 2005) (negligence).  The circumstances in which it is appropriate to create federal rules of decision are "few and restricted," and limited to situations where there is a "significant conflict between some federal policy or interest and the use of state law."  Atherton v. F.D.I.C., 519 U.S. 213, 218 (1997) (citations and quotation marks omitted); Resolution Trust Corp. v. Young, 925 F. Supp. 164, 167-68 (S.D.N.Y. 1996) (quoting O'Melveny & Myers v. FDIC, 512 U.S. 79, 87 (1994)); see also F.D.I.C. v. Oldenburg, 34 F.3d 1529, 1538 (10th Cir. 1994) ("[s]tate law is presumed adequate" absent conflict) (citations omitted).  See also O'Melveny, 512 U.S. at 87-88 (finding that courts only apply federal law if it preempts state law, or if there is some conflict significant enough to warrant the creation of federal common law).

State law is preempted under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, in only three circumstances: (1) where Congress expressly provides for preemption on a particular subject (English v. Gen. Elec. Co., 496 U.S. 72, 78-79 (1990) (citing Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 95-98 (1983))); (2) where Congress so thoroughly regulates conduct in a field that Congress implies that it intends the federal government to occupy the field exclusively ("field" preemption) (English, 496 U.S. at 79); and (3) where state law "actually conflicts with federal law" ("conflict" preemption). Id.; Niagara Mohawk Power Corp. v. Chevron USA, Inc., 596 F.3d 112, 138 (2d Cir. 2010). "Absent clear congressional intent to the contrary, federal preemption of state law is not favored... especially in areas of law traditionally occupied by the states." Marsh v. Rosenbloom, 499 F.3d 165, 177-78 (2d Cir. 2007) (citations omitted).

Plaintiffs have not alleged and cannot maintain that Congress expressly provided for preemption of all law relating to IRAs, nor that the "field" of IRAs is completely occupied by a federal regulatory scheme. Plaintiffs also do not allege any "conflict" between federal law and state law. Plaintiffs have

alleged that identical state and federal law causes of action can co-exist in the same complaint.  Plaintiffs have thus effectively conceded that there is no federal preemption here.

These same principles preclude Plaintiffs' argument that this Court should create new "federal common law." "'[T]here is no federal general common law.'"  O'Melveny & Myers, 512 U.S. at 83 (quoting Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).  As noted above, the circumstances in which it is appropriate to create federal rules of decision are "few and restricted," and limited to situations where there is a "significant conflict between some federal policy or interest and the use of state law."  Atherton, 519 U.S. at 218.

No basis has been established for the federal claims alleged, and they are dismissed.

## V.   Plaintiffs' State Law Claims Are Dismissed in Part and Survive in Part

### a.  Plaintiffs' State Law Claims Are Not Precluded By Federal Securities Laws

The enactment of the Securities Litigation Uniform Standards Act ("SLUSA") has created difficult issues for the courts, in particular the elasticity of the "in connection with" phrase relating to the purchase and sale of covered securities.[3] Distinguished judges of this circuit and others have reached differing conclusions in the factual settings with which they have been presented.  For the reasons set forth below, the result here is closer to that reported in Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372 (S.D.N.Y. 2010), and Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities, 750 F. Supp. 2d 450 (S.D.N.Y. 2010), than the conclusions reached in Levinson v. PSCC Services, Inc., No. 3:09 Civ. 00269, 2009 WL 5184363 (D.Conn. Dec. 23, 2009), Mandelbaum, 09 Civ. 752, at *29-40[4], and Barron v. Igolnikov, No. 09 Civ. 4471, 2010 WL 882890 (S.D.N.Y. Mar. 10, 2010).

Congress enacted the Private Securities Litigation Reform Act ("PSLRA") in 1995 to heighten pleading standards and strengthen procedural safeguards in an effort to stem the tide

---

[3] Neither SLUSA itself nor its legislative history defines "in connection with."

[4] In Mandelbaum, the court determined that the plaintiffs, though they avoided stating it outright, had alleged fraudulent misrepresentation by the defendants.  Id. at *37-38.  That is not the case here.

of abusive securities litigation.  Merrill Lynch, Pierce, Fenner

& Smith Inc. v. Dabit, 547 U.S. 71, 81-82 (2006); In re Lord

Abbett Mut. Funds Fee Litig., 553 F.3d 248, 249-50 (3d Cir.

2009).  After the PSLRA's enactment, however, plaintiffs sought

to bring securities class actions under state, rather than

federal, law.  As the Second Circuit recognized:  "By suing in

state court under state statutory or common law, these litigants

were able to assert many of the same causes of action, but avoid

the heightened procedural requirements instituted in federal

court."  Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d

101, 107-08 (2d Cir. 2001).  In 1998, Congress enacted SLUSA to

counter these measures.  Id.; Ring v. AXA Fin., Inc., 483 F.3d

95, 97-98 (2d Cir. 2007).

        SLUSA requires dismissal of the following types of

claims:

        (1)   A "covered" class action;

        (2)   Brought under state statutory or common law;

        (3)   Alleging misrepresentation or omission of a

              material fact or use of a manipulative or

              deceptive device;

24

(4)   In connection with the purchase or sale of a
covered security.

15 U.S.C. § 78bb(f)(1).  Because it only addresses class
actions, SLUSA does not prevent a plaintiff from individually
asserting any valid state law claims that he or she might have.

SLUSA does not actually "preempt" any individual state
law causes of action, but rather denies plaintiffs the right to
use the class action device to bring a securities claim in state
or federal court unless they can satisfy the pleading standards
applicable to federal securities laws claims.  The Supreme Court
has held that courts should give SLUSA a broad reading.  See
Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc., 521 F.3d
1278, 1284 (10th Cir. 2008) (citing Dabit, 547 U.S. at 85-86
(2006)).

The CAC satisfies two requirements for dismissal under
SLUSA.  First, this is a "covered class action," which is
defined by SLUSA to include "any single lawsuit in which... one
or more named parties seek to recover damages on a
representative basis on behalf of themselves and other unnamed

parties similarly situated...."  15 U.S.C. §

77p(f)(2)(A)(i)(II).  See CAC ¶¶ 1, 26, 107.  Second,

Plaintiffs' state law claims of breach of fiduciary duty, breach

of contract, unjust enrichment, and negligence are all based on

state common law.  However, the CAC does not satisfy SLUSA's

remaining two requirements:  there are no misrepresentations or

omissions of a material fact or use of a manipulative or

deceptive device made in connection with the purchase or sale of

a covered security.

        The CAC alleges that the Defendants: (1) turned the

trust assets they were obligated to safeguard over to a third

party (Nicholson); (2) failed to check with Depository Trust

Corporation or other such organizations as to whether Nicholson

continued to hold the assets in a properly segregated form or at

all; (3) failed to act in accordance with the customs and

standards in the industry to track, maintain custody over, hold,

preserve, safeguard, and avoid the commingling of the trust

assets; (4) failed to maintain title to the (non-existent)

assets; (5) failed to contact beneficiaries during the course of

their fiduciary relationship; (6) failed to obtain audited

financial statements from a recognized accountant; (7) failed to

26

conduct the required basic due diligence that would have
revealed numerous red flags, including the fact that Nicholson
had been permanently barred from the securities industry back in
2001; and (8) failed to furnish legally mandated statements
accurately reflecting the value of the assets held in
Plaintiffs' retirement and pension accounts.  CAC ¶ 51.

The CAC alleges that Defendants violated state and
federal law by breach of fiduciary duty, ordinary and gross
negligence, and unjust enrichment, thereby entitling Plaintiffs
to restitution.  No claim is made of misrepresentation or
omission or the employment of a single manipulative or deceptive
device in connection with the purchase or sale of a single
covered security.

Courts have held that it is the allegations made in
the complaint that form the basis of their SLUSA analysis:
"[b]ecause the determination of whether SLUSA applies may only
be made by reference to what a party has alleged, and not what
it could have alleged, courts should be wary of a defendant's
attempts to recast the plaintiff's complaint as a securities
lawsuit in order to have it preempted by SLUSA." MDCM Holdings,

Inc. v. Credit Suisse First Boston Corp., 216 F. Supp. 2d 251,
257 n. 12 (S.D.N.Y. 2002) overruled on other grounds by Spielman
v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 332 F.3d 116,
123 (2d Cir.2003); see also Paru v. Mutual of America Life Ins.
Co., No. 04 Civ. 6907, 2006 WL 1292828, at *3 (S.D.N.Y. May 11,
2006) ("defendant may not recast. . . [the] Complaint as a
securities fraud class action so as to have it preempted by
SLUSA").

          Plaintiffs acknowledge that the Court may choose to
"look beyond the face of the [complaint] to determine whether
[it alleges] securities fraud in connection with the purchase or
sale of covered securities." Romano v. Kazacos, 609 F.3d 512,
519 (2d Cir. 2010). Furthermore, the Court must be mindful that
a "narrow reading" of SLUSA "would undercut the effectiveness of
[the PSLRA] and thus run contrary to SLUSA's stated purpose,
viz., 'to prevent certain State private securities class action
lawsuits alleging fraud from being used to frustrate the
objectives' of [the PSLRA]." Dabit, 547 U.S. at 86.  At the
same time, in SEC v. Zandford, 535 U.S. 813, 825 & n. 4 (2002),
the Supreme Court, analyzing Section 10(b) and Rule 10b-5 in a
civil securities fraud case brought by the SEC, noted that

28

although the phrase "in connection with" should be interpreted "flexibly to effectuate its remedial purposes," it "does not transform every breach of fiduciary duty into a federal securities violation." Id. (citations omitted).  Applying Zandford's reasoning in the SLUSA context, courts have held that "'the fraud in question must relate to the nature of the securities, the risks associated with their purchase or sale, or some other factor with similar connection to the securities themselves.'"  Falkowski v. Imation Corp., 309 F.3d 1123, 1130-31 (9th Cir. 2002), as amended in 320 F.3d 905 (9th Cir. 2003) (quoting Ambassador Hotel Co. v. Wei-Chuan Inv., 189 F.3d 1017, 1026 (9th Cir. 1999)).  Explaining further, the court in Falkowski noted that "[w]hile the fraud in question need not relate to the investment value of the securities themselves, it must have more than some tangential relation to the securities transaction." Falkowski, 309 F.3d at 1130-31 (quoting Ambassador Hotel, 189 F.3d at 1026).  Reviewing Plaintiffs' allegations with these holdings in mind, the Court still finds that the CAC's allegations are outside SLUSA's preemptive scope.

The guidance provided by the Court in Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc., 341 F. Supp. 2d

258 (S.D.N.Y. 2004), is useful.  In Xpedior, the Court held that
under SLUSA, "regardless of the words used by a plaintiff in
framing her allegations and regardless of the labels she pastes
on each cause of action, a court must determine whether fraud is
a necessary component of the claim."  Id. at 261 (emphasis in
original).  In other words, "the simple inquiry is whether
plaintiff is pleading fraud in words and substance."  Id. at
268.  Under the necessary component test, "a complaint is
preempted under SLUSA when it asserts (1) an explicit claim of
fraud or misrepresentation (e.g., common law fraud, negligent
misrepresentations, or fraudulent inducement), or (2) other
garden-variety state law claims that 'sound in fraud.'"  Id. at
261.  In Xpedior, the court held that the claims of violation of
an underwriting agreement were not preempted by SLUSA, reasoning
that fraud was not a necessary component of the breach of
contract claims.  Id. at 270.


        In Romano, the Second Circuit recently dealt with this
issue when it held that a "defendant's alleged fraud must
'coincide' with plaintiff's purchase or sale of covered
securities to meet SLUSA's 'in connection with' requirement."
609 F.3d at 521 (quoting Dabit, 547 U.S. at 85).  The Court

30

explained that "SLUSA's 'in connection with' standard is met where plaintiff's claims 'turn on injuries caused by acting on misleading investment advice'—that is, where plaintiff's claims 'necessarily allege,' 'necessarily involve,' or 'rest on' the purchase or sale of securities." Id. at 522 (quoting Dabit v. Merrill Lynch, Fenner & Smith, Inc., 395 F.3d 25, 48, 50 (2d Cir. 2005)).

Courts have demonstrated a willingness to preclude cases under SLUSA where the plaintiffs clearly raise claims involving or sounding in fraud. See Dabit, 547 U.S. at 89 (finding SLUSA pre-emption appropriate where the complaint made explicit allegations of securities fraud through manipulation designed to inflate the prices of stocks). In Levinson, 2009 WL 5184363, at *9, the plaintiffs alleged that the defendants "engaged in a scheme" with Bernard Madoff "to operate a common investment fund" and "induced plaintiffs into investing their assets in the fund by misrepresenting the extent to which [they] would safeguard their assets." The Court found that according to the terms of the complaint, "some of the misrepresentations... were necessary conditions for... Madoff's purported purchase and sale of securities for Plaintiffs' fund."

31

Id.  The Levinson plaintiffs also brought claims for civil RICO
(with fraud as the predicate act), common law fraud, negligent
misrepresentation and aiding and abetting conversion and
statutory theft.  Id. at *1.  Applying Xpedior's necessary
component test, the Court found that "because a
misrepresentation or other fraudulent conduct [was] a necessary
element of [those] causes of action," they were preempted by
SLUSA.  Id. at *12.  Notably, the complaint in Levinson alleged
that the defendants intended to breach their contractual
obligations at the time the contracts were formed.  Id. at *13.
The non-fraud-based causes of action had incorporated by
reference all the preceding allegations, including allegations
of intentional misrepresentation.  Id.  See also Newman v.
Family Management Corp., 748 F. Supp. 2d 299 (S.D.N.Y. 2010)
(where plaintiffs alleged that defendants had engaged in common
law fraud as well as numerous Securities Act violations, SLUSA
preclusion was applied); In re Beacon Associates Litigation, 745
F. Supp. 2d 386, 429-31 (S.D.N.Y. 2010) (same).


        However, where claims of fraud or sounding in fraud
are not raised by a plaintiff, Courts have been unwilling to
apply SLUSA preclusion.  See LaSala v. Bank of Cyprus Public Co.

32

Ltd., 510 F. Supp. 2d 246, 273-74 (S.D.N.Y. 2007) (cautioning,
post-Dabit, against overreaching interpretations of the "in
connection with" requirement that would lead to absurd results,
and rejecting a motion to dismiss claims that did not sound in
fraud); Montreal Pension Plan, 750 F. Supp. 2d at 453, 454, 455
(where plaintiffs alleged that certain defendants had made
various "untrue statements of material fact" about hedge funds
by distributing "materially false monthly statements regarding
the net asset value… and other performance information," the
Court found that defendants were "taking [Dabit] out of context"
and noted that, in Dabit, the Supreme Court had "addressed the
narrow question of whether SLUSA preempted state-law claims
brought by holders of securities, as well as those of purchasers
and sellers."  In rejecting the defendants' bid for summary
judgment on state-law claims, the Court found that "covered
securities are not 'at the heart'" of plaintiffs' case and ruled
that "[t]he interpretation of SLUSA urged by the . . .
[d]efendants stretches the statute beyond its plain meaning.")
(internal citations omitted); Paru, 2006 WL 1292828, at *5
(denying defendant's motion to dismiss under SLUSA where it was
clear plaintiff's allegations were not based, "either explicitly
or implicitly, on any misstatements or omissions," but rather on

the allegation that "defendant had a fiduciary obligation to take certain measures to protect the long term viability of plaintiff's investments, defendant failed to do so, and such failure resulted in plaintiff being harmed.")

The CAC also fails to satisfy the fourth SLUSA requirement, that the misrepresentations be made in connection with the purchase or sale of a covered security.  In Anwar v. Fairfield Greenwich Ltd., the Court addressed similar facts to those presented here.  The defendants in Anwar argued that because the plaintiffs' assets were ultimately funneled into a Ponzi scheme that outwardly purported to invest in covered securities, the complaint's state law claims were preempted. Anwar, 728 F. Supp. 2d at 398-99.  After acknowledging that, post-Dabit, it was obliged to interpret the statute's "in connection with" language broadly, the Court found that "stretching" the statute to preclude the allegations before it would "snap[] even the most flexible rubber band."  Id. at 399.

Here, as in Anwar, the investment to be purchased was an intermediate fund, the Westgate Fund, itself not a covered security.  Plaintiffs' allegations against Defendants do not

sound in fraud or allege fraud-based causes of action.   The
rubber band of "in connection with" does not reach beyond
Westgate to Nicholson's Ponzi scheme.

### b. Delaware Law Applies to the Contract Claims While New York, New Jersey, and California Law Apply to the Tort Claims

A federal district court applies the choice-of-law
rules of the State in which it sits.  Klaxon v. Stentor Electric
Mfg. Co., 313 U.S. 487 (1941).  In New York, "[i]t is well
settled that courts will enforce a choice of law clause so long
as the chosen law bears a reasonable relationship to the parties
or the transaction."  Lupien v. Lupien, 819 N.Y.S.2d 785, 785-86
(4th Dept. 2009) (internal citations and quotation marks
omitted).  The SIRTA governing the parties' relationship
contains a choice of law provision that states: "This Trust
Agreement is made pursuant to and shall be construed in
accordance with the laws of the State of Delaware."  SIRTA §
5.8(K).  As Plaintiffs allege, Delaware Charter Guarantee &
Trust Company is organized under the laws of Delaware with its
principal place of business in Wilmington, Delaware.  As a
result, this Court will enforce the Trust Agreement's choice of

law clause and apply Delaware law with respect to Plaintiffs'
breach of contract claims.

Under New York choice of law rules, tort claims are
outside the scope of contractual choice of law provisions.
Plymack v. Copley Pharm., Inc., No. 93 Civ. 2655, 1995 WL
606272, at *5 (S.D.N.Y. Oct. 12, 1995) (Under New York law, "[a]
contractual choice-of-law provision... does not bind the parties
with respect to non-contractual causes of action.") (citing
Fustok v. Conticommodity Servs., Inc., 618 F. Supp. 1082, 1089
(S.D.N.Y. 1985)).  To determine which law applies in a tort
action, New York courts apply an "interest analysis," under
which the law of the jurisdiction with the greatest interest in
the litigation applies.  AroChem Int'l, Inc. v. Buirkle, 968
F.2d 266, 270 (2d Cir. 1992) (citing Schultz v. Boy Scouts of
America, Inc., 65 N.Y.2d 189, 197 (1985)); see also Babcock v.
Jackson, 12 N.Y.2d 473, 481-82 (1963).  "Two separate inquiries
are... required to determine the greater interest: (1) what are
the significant contacts and in which jurisdiction are they
located; and, (2) whether the purpose of the law is to regulate
conduct or allocate loss."  Padula v. Lilarn Properties Corp.,
84 N.Y.2d 519, 521 (1994) (citing Schultz, 65 N.Y.2d at 198).

Where the laws alleged to be in conflict are conduct-regulating, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." Cooney v. Osgood Mach., 81 N.Y.2d 66, 72 (1993); see also Ackerman v. Price-Waterhouse, 683 N.Y.S.2d 179, 189 (1st Dept. 1998) (quoting Cooney, 81 N.Y.2d at 72); In re New York City Asbestos Litigation, No. 190078/08, 2011 WL 921366, at *4 (N.Y.Sup. Mar. 11, 2011) (quoting Cooney, 81 N.Y.2d at 72). "With respect to tort claims, this is usually the state where the tort took place." In re Currency Conversion Fee Antitrust Litig., 230 F.R.D. 303, 311 (S.D.N.Y. 2004). In cases such as this, the locus of the tort tends to be where the alleged victims resided, as that is the locus of their economic loss. Id. See also Bon Jour Group, Ltd v. Elan-Polo, Inc., No. 96 Civ. 6705, 1997 WL 401814, at *4 (S.D.N.Y. July 16, 1997) ("where the location of the alleged tort is not apparent, the tort is deemed to occur where the party resides and sustained an economic loss resulting from the tort") (citation omitted). On the other hand, where the conflicting laws are loss-allocating, "other factors are taken into consideration, chiefly the parties' domiciles." New

37

York City Asbestos Litigation, 2011 WL 921366, at *4 (quoting

Cooney, 81 N.Y.2d at 72).


      Here, Plaintiffs allege that Defendants breached their

fiduciary duties and were otherwise negligent in fulfilling

their obligations to Plaintiffs.  These alleged legal duties are

conduct-regulating.  In terms of contacts, Defendants are

Delaware corporations with their primary places of business in

Delaware and Iowa.  Plaintiffs resided in New York, New Jersey,

and California when injured.  Defendants contend that the Court

should apply the laws of these three jurisdictions, as they

represent the locus of the harm.[5]  In light of the foregoing, the

laws of New York, New Jersey, and California will be applied to

Plaintiffs' tort claims.


### c. The Motion to Dismiss the Contract Claims is Granted in Part and Denied in Part

      Plaintiffs assert three state common law breach of

contract claims (Pl. Opp. Mem. at 20): (1) Defendants breached

---

[5] Plaintiffs contend that only New York law should be applied because the underlying fraud which damaged the Plaintiffs' accounts was orchestrated in New York.  However, that conduct is not the alleged tort in this action, and it was not perpetrated by any of the defendants.  Therefore, it is not part of the interest analysis.

their contractual obligation "[t]o hold any securities in bearer form or in the name of the banks, brokers, and other custodians or in the name of the trustee without qualification or descriptions or in the name of any nominee" (CAC ¶¶ 51, 122); (2) Defendants breached their contractual obligations not to commingle the trust with any other property they held (CAC at ¶ 124, IRC §408(a)(5), 26 C.F.R. §§1.408-2(b)(5)(i)); and (3) Defendants breached their obligations to determine the assets held at the end of each calendar year and make a report of same, and furnish such report to Plaintiffs.  (CAC at ¶ 168.)

Defendants' obligation "[t]o hold any securities in bearer form or in the name of the banks, brokers, and other custodians or in the name of the trustee without qualification or descriptions or in the name of any nominee" comes from SIRTA § 5.5(F).  Plaintiffs claim that Defendants failed to meet their obligations in this regard.  See CAC ¶¶ 51, 90.  Defendants contend that they met all of their contractual obligations, particularly in light of that fact that SIRTA § 5.5(F) allows Defendants "[t]o leave any securities or cash for safekeeping or on deposit, with or without interest, with such banks, brokers and other custodians as the Trustee may select."  However, as is

39

discussed in further detail below, such factual disputes, including the interpretation of ambiguous contract provisions, are inappropriate for resolution on a motion to dismiss.

However, Plaintiffs have failed to allege the breach of a contractual duty not to commingle the trust funds with any other properties.  Plaintiffs apparently base this asserted duty on IRC § 408(a)(5) and 26 C.F.R. §§ 1.408-2(b)(5)(i).  Even if it is assumed that such a duty is read into the SIRTA by its stated purpose ("to establish a Traditional IRA under Internal Revenue Code ("Code") Section 408(a)"), Defendants have contended that Plaintiffs' allegation that Principal Trust "commingled" their funds is unsupported by any specific allegations.  See, e.g., CAC ¶¶ 11, 12, 14, 140.  The CAC alleges that Nicholson commingled Plaintiffs' assets within the Westgate funds, not that Defendants ever actually "commingled" any assets themselves.  See CAC ¶¶ 16, 22, 146.  Plaintiffs' allegations fail to identify how or why Defendants would be contractually liable for the "commingling" of funds by a third party.  To the contrary, IRA trustees such as Principal Trust cannot be held liable for a third party's alleged breaches of

40

trust.  See Metz v. Indep. Trust Corp., 994 F.2d 395, 402 (7th

Cir. 1993).


      With regard to the third listed obligation, SIRTA §

5.5(N) provides as follows:


> Within ninety (90) days from the close of each Trust
> Year, the Trustee shall render an accounting, valuing
> the assets at fair market value, to the Account
> Holder.  The accounting may consist of copies of
> regularly issued broker-dealer statements to the
> Trustee and copies of mutual fund, insurance company,
> and other investment summary account statements
> supplied to the Trustee.  The Account Holder must file
> any exceptions or objections to the accounting with
> the Trustee in writing, within sixty (60) days of the
> mailing of such accounting.  In the absence of such
> filing, the Account Holder shall be deemed to have
> approved such account; and in such case, or upon the
> written approval of the Account Holder of any such
> account, the Trustee shall be released, relieved and
> discharged with respect to all matters and things set
> forth in such account as though such account had been
> settled by the decree of a court of competent
> jurisdiction.  No person other than the Account Holder
> may require an accounting or bring any action against
> the Trustee with respect to the Trust or its actions
> as Trustee.


      The CAC at ¶ 168 provides:


> 168.  The defendants breached their contract by
> failing to furnish the required annual report.  See
> IRS Letter in Application Booklet.


41

Defendants' disputes and denials of the facts alleged in the CAC are improper for a Rule 12(b)(6) motion to dismiss, where factual allegations are taken as true and viewed in a light most favorable to Plaintiffs.  In re Morgan Stanley ERISA Litig., 696 F. Supp. 2d 345, 353 (S.D.N.Y. 2009).

Defendants have contended that Plaintiffs actually received quarterly statements from the Trust Company regarding their IRA accounts.  (Def. Mem. in Supp. at 26).  This is contrary to the CAC, which alleges that documents were sent directly to Nicholson and not to Plaintiffs, and that no funds actually remained in Class Member accounts after Nicholson's depredations.  CAC ¶¶ 51, 126-29.  These allegations are sufficient to state a claim for breach of contract.

Defendants contend that the SIRTA's exculpatory language immunizes them from Plaintiffs' breach of contract claims.  However, the exculpatory language in the agreement does not clearly apply to Plaintiffs' claims regarding holding assets and furnishing annual reports.  Therefore, these breach of contract claims survive the exculpatory language at this stage.

Furthermore, the SIRTA itself acknowledges in § 5.8(B) that the trustee may be liable for intentional misconduct or negligence.

Plaintiffs' breach of contract claims are also based in part on various "letters" Principal Trust allegedly sent to Plaintiffs. For example, Plaintiffs' first breach of contract claim (Count 1) contains two allegations based on a "Form letter of understanding" allegedly transmitted to Plaintiffs: namely, that Principal Trust failed to perform by (i) not undertaking an administrative review of Nicholson prior to Plaintiffs' investment;[6] (ii) "having a business relationship" with Nicholson; and (iii) "engaging in a prohibited transaction" under Section 4795 of the Internal Revenue Code. CAC ¶¶ 51(h), 126-128. Plaintiffs further allege that Defendants failed to provide Plaintiffs with reports of all transactions related to the IRA based on an "IRS letter in Application Booklet." CAC ¶ 129; see also CAC ¶¶ 21, 51(j), 61, 63, 131, 168. Plaintiffs have sufficiently identified the letters at issue and have sufficiently alleged that they constitute agreements between the

---

[6] The CAC states that the administrative review was "contractually obligated." CAC ¶ 51(h). To the extent that Plaintiffs allege that the SIRTA provided for such a review, the Court finds that the contractual language is ambiguous as to Defendants' responsibilities to evaluate Nicholson in advance of investment. Therefore, this claim is not appropriate for resolution on a motion to dismiss.

43

parties which Defendants then breached.  As such, these claims survive the motion to dismiss.

### d.  The Economic Loss Doctrine Does Not Bar Plaintiffs' Negligence Claims

Defendants contend that the economic loss rule bars all of Plaintiffs' tort claims. (Def. Mem. in Supp. at 31).

Where plaintiffs allege primarily economic loss as an injury in a tort claim, "'the usual means of redress is an action for breach of contract; a tort action for economic loss will not lie.'" In re Adelphia Communications Corp., No. 02-41729, 2007 WL 2403553, at *9 (Bankr. S.D.N.Y. Aug. 17, 2007) (citation omitted); see also Robinson Helicopter Co., Inc. v. Dana Corp., 102 P.3d 268, 272 (Cal. 2004); Dean v. Barrett Homes, Inc., 968 A.2d 192,202 (N.J. Super. Ct. App. Div. 2009) (describing standards similar for motion to dismiss purposes). The purpose of the rule is:

> [T]o keep contract law from drown[ing] in a sea of
> tort ... [and with this goal in mind] New York courts
> restrict plaintiffs who have suffered economic loss,
> but not personal or property injury, to an action for
> the benefits of their bargains.  Thus, [i]f the
> damages suffered are of a type remediable in contract,
> a plaintiff may not recover in tort.

Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.P.A, 244
F.R.D. 204, 220 (S.D.N.Y. 2007) (quotation marks and citations
omitted).  See also Robinson Helicopter Co., 102 P.3d at 272;
Dean, 968 A.2d at 202.  "Moreover, by preventing the
encroachment of tort law into the domain of contract, the
economic loss doctrine protects parties' abilities to allocate
risk by mutual agreement and thereby form reliable expectations
about their potential financial exposure with respect to the
duties and liabilities that they have contractually assumed."
Travelers Cas. and Sur. Co. v. Dormitory Authority - State of
New York, 734 F. Supp. 2d 368, 379 (S.D.N.Y. 2010).  See also
Dana, 102 P.3d at 276 (economic loss doctrine allows parties to
allocate risk); Alloway v. General Marine Indus. L.P., 149 N.J.
620, 628 (N.J. 1997) (same).


          As stated by the New York Court of Appeals,

    [A] defendant may be liable in tort when it has
    breached a duty of reasonable care distinct from its
    contractual obligations, or when it has engaged in
    tortious conduct separate and apart from its failure
    to fulfill its contractual obligations.  The very
    nature of a contractual obligation, and the public
    interest in seeing it performed with reasonable care,
    may give rise to a duty of reasonable care in
    performance of the contract obligations, and the

45

breach of that independent duty will give rise to a
tort claim.  Where a party has fraudulently induced
the plaintiff to enter into a contract, it may be
liable in tort, or where a party engages in conduct
outside the contract but intended to defeat the
contract, its extraneous conduct may support an
independent tort claim.  Conversely, where a party is
merely seeking to enforce its bargain, a tort claim
will not lie.

New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 316 (N.Y.
1995).


    Significantly, the SIRTA explicitly carves out claims

of negligence from its coverage.  Section 5.8(B) provides that

"[t]he Trustee shall not be liable for any act or omission made

in connection with the Trust except for its intentional

misconduct or negligence."  Plaintiffs' negligence claims thus

seek to enforce duties outside of the contract and cannot be

precluded by Plaintiffs' contract claims.


    As noted above, the purpose of the economic loss

doctrine is to allow parties to allocate risk.  In light of

SIRTA § 5.8(B), it would be improper to apply the economic loss

doctrine to dismiss Plaintiffs' negligence claims.


46

**e. Plaintiffs Adequately Plead Their Negligence Claims**

To establish a prima facie case of negligence, a plaintiff must establish "(1) a duty of care owed to plaintiff by defendant, (2) a breach of that duty by defendant, (3) proximate cause, and (4) actual damages." Brunson v. Affinity Fed. Cred. Union, 199 N.J. 381, 400 (2009). See also Iversen v. California Village Homeowners Assn., 123 Cal. Rptr. 3d 360 (Cal.App.Dist.2 2011) (Negligence requires "a legal duty to use due care, a breach of that duty, and [that] the breach is the proximate or legal cause of the resulting injury."); Jiminez v. Shahid, 2011 N.Y. Slip Op. 03212, 2011 WL 1499905, at *1 (2d Dept. Apr. 19, 2011) (same).

The Defendants urge dismissal of the Plaintiffs' claims of negligence because of the absence of any duty enumerated in the SIRTA. (Def. Mem. in Supp. at 25-29.)

The SIRTA is characterized throughout as a Trust and describes the aspects of a "Traditional IRA under the Internal Revenue Code ("Code") Section 408(a)" and includes provisions with respect to investments and administration. See SIRTA, Art. I, V. The SIRTA charges Defendants with three main duties: (1)

to accept contributions and make investments "in accordance with
the instructions of the Account Holder," including "through the
facilities of [a] Brokerage Firm" selected by the Account Holder
(SIRTA §§ 5.1(E), 5.5(G)); (2) to make distributions out of the
IRA account "on the written directions of the Account Holder"
(SIRTA § 5.3(A)); and (3) to perform limited administrative
services with respect to the accounts, including rendering
accountings (including through information supplied in broker-
dealer statements) (SIRTA § 5.5(N)).

CAC Count 2 alleges that, under federal law,
Defendants "negligently failed to preserve, to retain control
over, to hold, and to safe-keep the Trust res" and "negligently
failed to prevent the commingling and dissipation of the Trust
res." CAC ¶¶ 135-36. Count 6 appears to bring Count 2's
allegations under state law. CAC ¶ 150. Count 9 appears to
allege negligence under state law for failure to furnish
statements to Plaintiffs, though the Count refers to Count 6.
CAC ¶ 158. Count 13 also alleges that Defendants were negligent
under state law for their failure to furnish an accurate report.
CAC ¶ 171. Count 17 alleges negligence under federal law on the
basis of Defendants' failure to render accurate annual

statements.  CAC ¶ 190.  Count 21 appears to bring Count 17's

allegations regarding Defendants' failure to render reports

under state law.  CAC ¶ 203.


        As discussed above, the SIRTA itself acknowledges in §

5.8(B) a liability for intentional misconduct or negligence by

the trustee.  This acknowledgement trumps Defendants'

contention.


### f.  The Motion to Dismiss the Breach of Fiduciary Duty Claims is Denied

        Under New York law, a claim for breach of fiduciary

duty requires:  (1) the existence of a fiduciary duty between

the parties; (2) a breach of that duty; (3) the defendant's

knowing participation in that breach; and (4) damages resulting

from that breach.  Pension Committee of the University of

Montreal Pension Plan v. Banc of America Securities, 446 F.

Supp. 2d 163, 195-96 (S.D.N.Y. 2006).  A fiduciary relationship

may arise through contract.  Id.  See also Gutierrez v. Girardi,

194 Cal.App.4th 925, 2011 WL 1566979, at *4 (Cal.App.Dist.2 Apr.

27, 2011) ("The elements of a cause of action for breach of

fiduciary duty are: (1) existence of a fiduciary duty; (2)

breach of the fiduciary duty; and (3) damage proximately caused

by the breach") (quoting Stanley v. Richmond, 35 Cal.App.4th

1070, 1086 (Cal.App.Dist.1 1995)).  Such a breach may be found

in any case "in which influence has been acquired and abused, in

which confidence has been reposed and betrayed."  United Feature

Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F. Supp.

2d 198, 218 (S.D.N.Y. 2002) (quoting Penato v. George, 383

N.Y.S.2d 900, 904 (2d Dept. 1997)).  Under New Jersey law,

> The essence of a fiduciary relationship is that one
> party places trust and confidence in another who is in
> a dominant or superior position.  A fiduciary
> relationship arises between two persons when one
> person is under a duty to act for or give advice for
> the benefit of another on matters within the scope of
> their relationship.  Restatement (Second) of Torts §
> 874 cmt. a (1979); see In re Stroming's Will, 12
> N.J.Super. 217, 224, 79 A.2d 492 (App.Div.), certif.
> denied, 8 N.J. 319, 85 A.2d 272 (1951) (stating
> essentials of confidential relationship "are a reposed
> confidence and the dominant and controlling position
> of the beneficiary of the transaction"); Blake v.
> Brennan, 1 N.J.Super. 446, 453, 61 A.2d 916 (Ch.Div.
> 1948) (describing "the test [as] whether the
> relationship between the parties were of such a
> character of trust and confidence as to render it
> reasonably certain that the one party occupied a
> dominant position over the other"); Bogert, Trusts and
> Trustees 2d § 481 (1978) (stating "[t]he exact limits
> of the term 'fiduciary relation' are impossible of
> statement. Depending upon the circumstances of the
> particular case or transaction, certain business,
> public or social relationships may or may not create
> or involve a fiduciary character.").  The fiduciary's
> obligations to the dependent party include a duty of
> loyalty and a duty to exercise reasonable skill and

> care.  Restatement (Second) of Trusts §§ 170, 174
> (1959).  Accordingly, the fiduciary is liable for harm
> resulting from a breach of the duties imposed by the
> existence of such a relationship.  Restatement
> (Second) of Torts § 874 (1979).

F.G. v. MacDonell, 696 A.2d 697, 703-04 (N.J. 1997).  Under

California law, a plaintiff must establish that the fiduciary

voluntarily accepts his role: "a confidence is reposed by one

person in the integrity of another, and in such a relation the

party in whom the confidence is reposed, if he voluntarily

accepts or assumes to accept the confidence, can take no

advantage from his acts relating to the interest of the other

party without the latter's knowledge or consent….'"  Wolf v.

Superior Court, 130 Cal. Rptr. 2d 860, 863 (Cal.App.Dist.2 2003)

(citing Herbert v. Lankershim, 9 Cal.2d 409, 483 (1937); In re

Marriage of Varner, 55 Cal.App.4th 128, 141 (Cal.App.Dist.4

1997)).


         The CAC has alleged that the Defendants acknowledged

to Plaintiffs and Class Members, in various IRA account

documents and other written materials, their fiduciary

obligations to monitor and safeguard the investments of

Plaintiffs and Class Members.  The CAC has also alleged that

Defendants were fiduciaries through their role as account

custodians and trustees.  The CAC has sufficiently alleged that Defendants had fiduciary duties with respect to Plaintiffs and that Defendants breached those duties.[7]

Plaintiffs correctly note that the extent to which Defendants owed fiduciary duties to Plaintiffs, and then breached those duties, are questions of fact that should not be resolved on a motion to dismiss.  See Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank, 261 F.R.D. 13, 26 (S.D.N.Y. 2009) ("New York courts generally avoid dismissing a claim of breach of fiduciary duty . . . because it usually involves a question of fact:  whether someone reposed trust and confidence in another who thereby gains a resulting superiority or influence"); Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006) (whether a fiduciary duty exists "normally depends on the facts of a particular relationship, [and] therefore a claim alleging the existence of a fiduciary duty is not subject to dismissal"); F.G., 696 A.2d at 704.

---

[7] In Hines, 2010 WL 1249838, at *2-3, the court held that custodial, non-discretionary IRAs do not impose fiduciary duties upon the trustees and are not trusts for any other purpose by taxes.  See Id., citing IRC § 408(h). Here, the Court finds that Plaintiffs sufficiently allege the existence of fiduciary duties arising from Defendants' relationship with Plaintiffs.

However, under New York law, "a cause of action for breach of fiduciary duty that is merely duplicative of a breach of contract claim cannot stand." Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V., 901 N.Y.S.2d 618, 636 (1st Dept. 2010) (citing Granirer v. Bakery, Inc., 863 N.Y.S.2d 396, 399 (1st Dept. 2008); William Kaufman Org. v. Graham & James, 703 N.Y.S.2d 439, 442 (1st Dept. 2000)). New Jersey and California have similar pleading rules. See Jack v. Concordia Homes of Cal., LLC, No. D049863, 2008 WL 802605, at *6 (Cal. Ct. App. Mar. 27, 2008) ("A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations.") (citation omitted); Stewart Title Guar. Co. v. Greenlands Realty, L.L.C, 58 F. Supp. 2d 370, 386-87 (D.N.J. 1999) ("[the] tort claim for breach of fiduciary duty arises out of its title insurance policy... [t]hus, [the] claim... for breach of fiduciary duty sounds in contract, rather than in tort."). See also Mandelbaum, 09 Civ. 752, at *21 (dismissing breach of fiduciary duty claims under Colorado law where they overlapped with breach of contract claims and where the defendants did not have independent fiduciary duty claims because IRC § 408 did not provide them and state law did not govern IRAs).

However, "the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself." Mandelblatt v. Devon Stores, 521 N.Y.S.2d 672, 676 (1st Dept. 1987). In Centro Empresarial, the Court held that the relevant fiduciary duties arose from the contract at issue, but that they existed independently of that agreement and thus were not subject to dismissal on duplicity grounds. 901 N.Y.S.2d at 636. See also Prohealth Care Associates, LLP v. April, No. 15830-03, 2004 WL 1872915, at *5 (N.Y.Sup. Aug. 18, 2004) ("The same conduct may constitute both a breach of contract and a breach of a fiduciary duty.") (citing Bender Ins. Agency, Inc. v. Treiber Ins. Agency, Inc., 729 N.Y.S.2d 142 (2nd Dept. 2001); Davis v. Dime Savings Bank of New York, 557 N.Y.S.2d 775 (3rd Dept. 1990)). Similar exceptions exist under California and New Jersey law for independent fiduciary duty claims. Jack, 2008 WL 802605, at *6 (under California law, "[c]ourts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies")

54

(quotation marks and citation omitted); Stewart, 58 F. Supp. 2d
at 387 (indicating an exception under New Jersey law where a
defendant takes on an obligation independent of the contractual
obligations).

Plaintiffs' state law breach of fiduciary duty claims
invoke breaches of the SIRTA and appear to overlap with their
contract claims, particularly given that Plaintiffs contend that
the SIRTA necessarily incorporated Defendants' fiduciary duties.
See CAC ¶ 9 ("Defendants' standardized contract incorporated
federal law concerning IRAs"), ¶ 10 ("Under this standardized
form contract and federal law, Defendants owed minimum federal
fiduciary duties to each Class member"). See also CAC ¶¶ 42,
44, 45, 46, 47, 48, 50 (setting forth the alleged fiduciary
duties which federal law required to be written into the SIRTA,
and which allegedly were written into the SIRTA). Despite these
apparent overlaps, Plaintiffs contend that Defendants owed them
independent fiduciary duties because of their roles as IRA
trustees.

As noted above, it is inappropriate at the motion to
dismiss stage to assess whether, as a matter of fact, Defendants

actually owed fiduciary duties to Plaintiffs.  See Musalli, 261
F.R.D. at 26.  Plaintiffs have sufficiently alleged the
existence of a fiduciary relationship through Defendants' roles
as trustees and custodians of Plaintiffs' IRAs.[8]  Therefore,
Plaintiffs' breach of fiduciary duty claims survive.

### g. The Motion To Dismiss The Unjust Enrichment Claim Is Granted

To state a claim for unjust enrichment in New York[9], a
plaintiff must allege that:  (1) the defendant was enriched; (2)
the enrichment was at plaintiff's expense; and (3) the
circumstances were such that equity and good conscience require
defendant to make restitution.  Intellectual Capital Partner v.

---

[8] In Adams v. Fiserv ISS, No. D051778, 2008 WL 3890036, at *2-4
(Cal.App.Dist.4 Aug. 22, 2008), the Court held that the defendant owed
fiduciary duties to the plaintiffs through its role as trustee of self-
directed IRA accounts.

[9] Under New York choice of law rules, interest analysis is applied to claims
arising in equity, such as claims for unjust enrichment.  See In re Hydrogen,
LLC, 431 B.R. 337, 359 (Bkrtcy S.D.N.Y. 2010) (citing Icebox-Scoops, Inc. v.
Finanz St. Honore, B.V., 676 F. Supp. 2d 100, 109-10 (E.D.N.Y. 2009)
(applying New York's interest analysis to determine the governing law for an
unjust enrichment claim); In re Grand Theft Auto Video Game Consumer
Litigation, 251 F.R.D. 139, 149 (S.D.N.Y. 2008) (applying the "significant-
contacts test" to unjust enrichment claims.)  As with the tort claims, the
states in which Plaintiffs resided have the most significant contacts, as
they are the places of contracting, where performance was to occur, and where
Plaintiffs suffered losses.  Grand Theft Auto, 251 F.R.D. 149-50.  In this
case, these states are New York, New Jersey, and California.

Institutional Credit Partners LLC, No. 08 Civ. 10580, 2009 WL
1974392, at *8 (S.D.N.Y. Jul. 8, 2009).  See also VRG Corp. v.
GKN Realty Corp., 135 N.J. 539, 554 (1994) (under New Jersey
law, unjust enrichment claims require a plaintiff to "show both
that defendant received a benefit and that retention of that
benefit without payment would be unjust.").  Unjust enrichment
does not require a direct relationship between the parties.  See
In re Canon Cameras Litig., No. 05 Civ. 7233, 2006 WL 1751245 at
*2 (S.D.N.Y. June 23, 2006); see also Cox v. Microsoft Corp., 8
A.D.3d 39, 40-41 (1st Dept. 2004).


        There does not appear to be a claim for unjust
enrichment as such under California law.  See Levine v. Blue
Shield of California, 117 Cal. Rptr. 262, 278-79 (Cal.App.Dist.4
2010) ("Although some California courts have suggested the
existence of a separate cause of action for unjust enrichment,
this court has recently held that there is no cause of action in
California for unjust enrichment.  Unjust enrichment is
synonymous with restitution.  Thus, the [plaintiffs'] unjust
enrichment claim does not properly state a cause of action.")
(internal quotation marks and citations omitted).  Plaintiffs'
unjust enrichment claim under California law will thus be

treated as a claim for restitution under a theory of unjust enrichment.  The elements of such a claim are "the receipt of a benefit and unjust retention of the benefit at the expense of another."  Madrid v. JPMorgan Chase Bank, N.A., No. 09 Civ. 731, 2009 WL 3255880, at *5 (E.D.Cal. Oct. 8, 2009) (citing Lectrodryer v. SeoulBank, 77 Cal.App.4th 723, 726 (Cal.App.Dist.2 2000)).

The CAC has alleged that Defendants received fees from Plaintiffs while unjustifiably failing to perform their duties under the agreement.  CAC ¶¶ 53, 54, 64, 75, 92.

However, under the law of New York, New Jersey, and California, the existence of a valid and enforceable contract governing a particular subject matter precludes recovery for unjust enrichment arising out of the same matter. See Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1272 (S.D.N.Y. 1991) ("Unjust enrichment is a quasi-contract claim, and the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the subject matter.") (internal quotation marks and citations omitted;

58

emphasis in original); Hartford Fire Ins. Co. v. Federated Dep't
Stores, Inc., 723 F. Supp. 976, 994 (S.D.N.Y. 1989) ("Unjust
enrichment is designed to prevent one person who has obtained a
benefit from another without ever entering into a contract with
that person from unjustly enriching himself at the other
person's expense.") (internal quotation marks and citation
omitted); Durell v. Sharp Healthcare, 108 Cal. Rptr. 682, 699
(Cal.App.Dist.4 2010) ("As a matter of law, an unjust enrichment
claim does not lie where the parties have an enforceable express
contract.") (citations omitted); Shalita v. Twp. of Wash., 636
A.2d 568, 571, 270 N.J. Super. 84, 90 (N.J. Super. Ct. App. Div.
1994) ("It has been said that [q]uasi-contract liability
[should] not be imposed... if an express contract exists
concerning the identical subject matter.") (alteration in
original; citations omitted).  Plaintiffs cannot raise an unjust
enrichment claim where, as here, a valid, enforceable contract
governs their relationship with Defendants.

        Plaintiffs contend that, under IRS rules, IRA
contracts must contain certain minimum requirements or they
fail.  If Defendants' express contracts do not meet the
regulations and thus are invalid IRA contracts, Plaintiffs are

59

entitled to assert an unjust enrichment theory in the
alternative.  Intellectual Capital Partner v. Institutional
Credit Partners, LLC, No. 08 Civ. 10580, 2009 WL 1974392, at *8
(S.D.N.Y. Jul. 8, 2009) ("Where, as here, the existence of an
enforceable contract is disputed, these claims may proceed
alongside IntelCap's breach of contract claim as alternative
theories."); Labajo v. Best Buy Stores, L.P., 478 F. Supp. 2d
523, 531 (S.D.N.Y. 2007) ("When there is a bona fide dispute as
to the existence of a contract, a party may proceed upon a
theory of unjust enrichment, and an unjust enrichment claim may
be alleged alongside a breach of contract claim."); Durell, 108
Cal. Rptr. at 699 (where contract is procured by fraud or
otherwise unenforceable or ineffective, unjust enrichment may be
pleaded).  While Plaintiffs claim that the written contracts
unlawfully purport to disclaim some of these requirements in
their opposition papers (Pl. Opp. Mem. at 29), they do not
appear to allege such contractual shortcomings in the CAC.
Rather, Plaintiffs allege that the SIRTA was a valid contract
which Defendants breached.  Without an allegation that the SIRTA
is invalid, Plaintiffs may not proceed with their unjust
enrichment claim.

Plaintiffs' unjust enrichment claim is dismissed.

## Conclusion

Based on the foregoing, Defendants' motion to dismiss is granted in part and denied in part.  Plaintiffs are granted leave to file an amended complaint with claims under state law within 60 days.

It is so ordered.

New York, NY
May 25, 2011

ROBERT W. SWEET
U.S.D.J.

61